UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIANNA A.,

        Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 2:20cv-1163-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

      Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

      Plaintiff argues the nature of her mental health impairments, including PTSD and bipolar disorder, inherently involves cycling and fluctuations of symptoms. Plaintiff was an imprisoned young adult in sex trafficking and has run an outreach team to help victims of sexual trafficking.

*See* AR 830. Although the ALJ cites plaintiff's positive activities such as writing a book to help others with such traumatic experiences, plaintiff's treating physician Dr. Sang Suh MD noted at the time plaintiff reported being "up and down." AR 498. She was "cycling between depression[,] not wanting to do life and being tired of living, to where she is the solution to all of trafficking issues and can fix it all and have all the energy to carry it off, then get paranoid and anxious." *Id.*

In this matter, sometimes, plaintiff experienced improvement in symptoms. In some contexts, improvement means change from a potentially disabled state to one in which the person clearly is capable of full-time competitive work. That is not the case here.

Although plaintiff reports attempting to connect "with other human trafficking survivors" on Facebook, sometimes she reportedly does not go outside for days and never without her service dog. *See* AR 363-64. During one episode of experiencing some improvement, plaintiff nevertheless was assessed by the treating physician as "anxious, fragile, at times, tearful . . . [with] a superficial cut on her wrist . . . . She has been worse but is still not doing entirely well." AR 504. Improvement is a relative term.

In addition, the ALJ rejected the opinions from a treating psychologist, Dr. King, by referencing the treatment notes of a treating physician, Dr. Suh, without apparent awareness that Dr. Suh opined that plaintiff was disabled, an opinion potentially substantiated by his treating record and rendering reliance on his record to discredit Dr. King's opinions of relevant limitations questionable and not such evidence as a reasonable mind would accept as adequate.

Because these errors are not harmless, this matter must be reversed and remanded for further Administrative consideration.

FACTUAL AND PROCEDURAL HISTORY

On July 21, 2016, plaintiff protectively filed an application for DIB and SSI, alleging disability as of April 1, 2014. *See* Dkt. 11, Administrative Record ("AR"), p. 302. The application was denied upon initial administrative review and on reconsideration. *See* AR 35. A hearing was held before Administrative Law Judge Eric S. Basse ("the ALJ") on March 8, 2019. *See* AR 69-114. In a decision dated June 28, 2019, the ALJ determined plaintiff to be not disabled. *See* AR 32-55. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In plaintiff's Opening Brief, plaintiff maintains the ALJ erred by: (1) failing to consider properly the opinions of the treating and examining providers and further failing to provide adequate explanation for not according their opinions greater weight; (2) providing a residual functional capacity ("RFC") to perform light work limited to simple routine tasks but no social limitations when this finding is not based on substantial evidence; and (3) concluding that plaintiff was capable of a RFC that included an ability to be less than 10% off task in a workday. Plaintiff's Opening Brief, ("Open"), Dkt. 14, p. 1. Defendant contends that the ALJ's written decision is supported by substantial evidence and free of legal error, and disputes issues raised by plaintiff. Defendant's Responsive Brief, ("Response"), Dkt. 15, p. 2.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence"

is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

DISCUSSION

I. **Whether the ALJ erred by failing to consider properly the opinions of the treating and examining providers and further failing to provide adequate explanation for not according their opinions greater weight.**

Plaintiff contends that the ALJ erred when evaluating medical and other evidence, especially regarding rejecting functional limitations from plaintiff's residual functional capacity ("RFC"). Open, Dkt. 14, pp. 2-13. Defendant contends "the ALJ summarized and interpreted the conflicting medical evidence." Response, Dkt. 15, p. 5 (*citing* AR 35-48).

The parties agree that in this matter, an "ALJ may reject the contradicted evidence of a medically acceptable treating [or examining] source by providing specific legitimate reasons based on substantial evidence in the record," Response, p. 5 (citations omitted), and that an "ALJ does this by setting out a detailed and thorough summary of the facts and the conflicting evidence, stating his interpretation of the facts and evidence, and making findings." Open, pp. 2-3 (citations omitted); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

On March 6, 2019, Dr. Eric King, PhD, LMHC, submitted a letter describing his treating relationship with plaintiff. *See* AR 1297. He indicated meeting with plaintiff on a weekly basis for counseling since October 2018. *Id*. Dr. King included the following in his letter:

> In my work with [plaintiff], I have noted significant problems she has with a number of different triggers that exacerbate her underlying PTSD symptoms. When this happens, she is unable to concentrate, attend to the simplest of tasks, will often make mistakes, and have misinterpretations and easily becomes confused. This would happen in any work situation and she would have experiences of not understanding what she was supposed to do or not be able

> to effectively follow through on even the simplest tasks or chores. Additionally, interpersonally, she would have difficulty with coworkers or supervisors, easily becoming confused, not understanding social interactions, and then responding or acting in a way that would offend others, and not understanding why.
>
> In her current level of functioning, her ability to hold on a full-time job with typical requirements of attention, concentration, completing tasks as assigned, *etc.*, is markedly to severely impacted due to her psychiatric symptoms.

AR 1297.

The ALJ indicated giving "little weight" in his written opinion to Dr. King's 2019 opinions. *See* AR 46-47. First, the ALJ found that Dr. King's opined limitations "are not consistent with the record as a whole, including [plaintiff's] presentations during appointments and the mental status examination." AR 46-47 (internal citations omitted). Plaintiff contends that the ALJ is only picking out the evidence that supports a finding of not disabled and ignoring evidence that supports plaintiff's claim. *See* Open, p. 6 (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the ALJ improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment") Plaintiff contends even in the treatment records cited by the ALJ, there are notations supporting her mental status examinations were not fully normal.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical

examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (quoting *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical

expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

In support of the ALJ's finding that Dr. King's opined limitations were not consistent with the record including plaintiff's presentations during appointments and MSEs, the ALJ cited Exhibit 3F15, that is, AR 512. AR 46 (citing 3F/15, *i.e.*, AR 512). While it is true that plaintiff was pleasant, cordial, and cooperative, the treating physician also opined plaintiff's mood was anxious, agitated and depressed; her affect "remains fragile;" her thought process was over abundant; and her thought content was obsessive. AR 512. Plaintiff's treating physician, Dr. Sang Suh, MD, included these assessments in the "objective" section of his treatment note. *See id.*; *see also* AR 508. Similarly, on an occasion cited by the ALJ in support of his finding that plaintiff reported things were going well, plaintiff also reported that "she still cannot focus until taking afternoon dose," and she was observed to be "irritable [and] fragile and tearful." AR 508.

Plaintiff also argues that "the ALJ's focus on [MSE] results is misguided, as the records demonstrate fluctuation in mood . . . . [and] Dr. King explained that plaintiff's most incapacitating limitations arose when she was triggered." Open, p. 6 (citing AR 1297). This argument is persuasive as the ALJ's references to plaintiff demonstrating positive affect do not appear to be occurring when she is in a triggered state.

Based on a review of the record, including the citations from plaintiff, the Court concludes that the ALJ's finding that Dr. King's opined limitations are inconsistent with the record as a whole including plaintiff's presentations during appointments and MSE is not a finding based on substantial evidence as it is not based on such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes*, *supra*,

881 F.2d at 750 (quoting *Davis*, *supra*, 868 F.2d at 325-26). Dr. King did not opine that plaintiff would demonstrate these limitations constantly, but only when she was "triggered." *See* AR 1297.

The ALJ also indicated in the written decision that although Dr. King had a treating relationship with plaintiff, it was "relatively brief when comparing to that of Dr. Suh, who repeatedly opined that [plaintiff]'s symptoms are stable or under control." AR 47 (internal citations omitted). Plaintiff argues that "the ALJ's characterization of Dr. Suh's view of plaintiff is simply inaccurate and also a clear instance of cherry picking from Dr. Suh's notes." Open, p. 7.

Based on a review of the record, the Court finds plaintiff's argument persuasive. *See id.* at pp. 7-9 (citations omitted). Not only is "stable" a term of art in medicine, but also, as the Court already has discussed, *see supra*, many of the pages cited by the ALJ from the treatment record, while containing some normal findings, demonstrate abnormal or fluctuating symptoms. *See, e.g.,* AR 508, 512; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("Dr. Baca's treatment notes do not indicate that he believed that claimant was sufficiently stable to return to work even when on medication. Given that Dr. Baca was contemporaneously and consistently reporting the claimant was unable to work as a result of her mental illness, his references to claimant being 'stable' may have simply meant that she was not suicidal").

In addition, the ALJ's rejection of the opinions of limitations from Dr. King with the general citation to the treatment record of Dr. Suh, without explanation of what aspect of Dr. King's opinion is inconsistent with what aspect of Dr. Suh's opinion, is not very specific. Indeed, Dr. Suh opined that plaintiff was disabled, an opinion not addressed by the ALJ in his written

decision. *See* AR 924 ("strongly encouraged continued pursuit of disability, as I do not believe she has the capacity to maintain consistent, gainful employment").

The ALJ's failure to credit fully the relevant opinions regarding plaintiff's limitations from Dr. King with a finding that Dr. King's relationship with plaintiff was "relatively brief when comparing to that of Dr. Suh, who repeatedly opined that [plaintiff's] symptoms are stable or under control," is not based on substantial evidence. *See* AR 47, 924. Although a treating physician's opinion regarding a claimant's inability to work like Dr. Suh's is not dispositive, it is highly relevant evidence when an ALJ is relying on it as support for the failure to credit another doctor's opinion of work-related limitations. In this context, the ALJ's reliance is error.

The ALJ also fails to credit fully the opinions from Dr. King with a finding that his opinions are not consistent with plaintiff's reported activities of daily living and social functioning and her own statements of improved mental symptoms with treatments and changes in circumstances. AR 47 (internal citations omitted). The ALJ indicates specifically that Dr. King's opinions contrast sharply with plaintiff's "report of improving mood, better controlled anxiety, good sleep, feeling better, less sensitive to noises, high motivation for change, and feeling hopeful in September 2018, and stable mood, adequate sleep and energy for new projects in November 2018." *Id*.

The Court already has discussed how the record demonstrates fluctuating and/or contrasting symptoms, sometimes in the same treatment record from the same day, *see supra*. For example, on March 23, 2015, plaintiff was pleasant, cordial, and cooperative, as noted by the ALJ, but also the treating physician opined plaintiff's mood was anxious, agitated and depressed; her affect "remains fragile;" her thought process was over abundant; and her thought content was

obsessive. *See* AR 512. Plaintiff's treating doctors opined these symptoms as consistent with her diagnoses, including bipolar disorder. *See, e.g., id*.

Similarly, despite the ALJ's repeated reference in the written decision to plaintiff's advocacy for sex trafficking victims, publishing a book talking about her personal encounters, and her ability to connect with other human trafficking victims, these activities do not demonstrate any inconsistency with Dr. King's opinions regarding limitations when plaintiff was triggered. *See, e.g.,* AR 46. The ALJ did not cite any evidence that plaintiff was able to engage in any of these behaviors when she was triggered. Therefore, her ability to do these tasks do not conflict with Dr. King's opinions regarding limitations she experiences when she was triggered. In addition, as noted in this discussion below regarding activities of daily living, these activities can be done on plaintiff's own schedule and not under the confines of full-time competitive work.

Regarding activities of daily living, the ALJ relied heavily on plaintiff's ability to take care of people living in her home, do housekeeping duties in her home, homeschool children, go shopping in stores, and live with roommates. *See, e.g.,* AR 46, 47. However, the ALJ has not cited any evidence that these activities cannot be done on plaintiff's schedule or that she does them at an appropriate pace for competitive work. For example, plaintiff reported that it takes her eight hours to clean the house. *See* AR 362. The record does not reflect the size of plaintiff's house, but plaintiff reports that she is "extremely slow." AR 362. Similarly, plaintiff reports that she usually gets help "to complete tasks." *Id*. Likewise, although the ALJ relies on the fact that plaintiff can cook, shop in stores, manage finances and connect with others over Facebook, the ALJ has not explained how these are inconsistent with the opinions of Dr. King regarding work-related limitations. *See* AR 45, 363 (5 to 8 minutes shopping per day; eats the exact same meal

every day once a day of yogurt, one avocado, strawberries, banana, cream cheese and chips; only can handle finances when not triggered). Dr. King opined plaintiff, when triggered, which would occur in any work situation, would "have experiences of not understanding what she was supposed to do or not be able to effectively follow through on even the simplest tasks or chores." AR 1297. The ALJ has not explained why this opinion is inconsistent with plaintiff's ability to, for example, shop for five to eight minutes a day on her schedule when not triggered for food.

The ALJ also relied on a finding that plaintiff sometimes was hopeful and she experienced improvement in symptoms. However, during one episode of experiencing some improvement, plaintiff nevertheless was observed by the treating physician to be "anxious, fragile, at times, tearful . . . [with] a superficial cut on her wrist . . . . She has been worse but is still not doing entirely well." AR 504. Improvement is a relative term. The ALJ's finding of an inconsistency between plaintiff's occasional periods of relative improvement and Dr. King's opined limitations experienced by plaintiff when triggered is not based on substantial evidence and does not support the rejection of Dr. King's opined limitations of plaintiff.

For the reasons stated, the Court concludes based on the record that the ALJ has not adequately set out a detailed explanation of the record as to why Dr. King's opinions regarding plaintiff's limitations are not adopted into the RFC: The ALJ's rationale in rejecting Dr. King's opinions is not based on substantial evidence.

Although plaintiff also alleges errors in the ALJ's evaluation of other medical evidence, because this matter must be reversed and remanded for further consideration of the opinion evidence from Dr. King, *see infra* Section II, the Court concludes that all of the medical evidence, including that from Drs. Suh and Mashburn, and from other source providers, should be evaluated anew following remand of this matter.

## II. Harmless error

The Ninth Circuit has "long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless if it is "'inconsequential to the ultimate non[-]disability determination.'" *Molina*, *supra*, 674 F.3d at 1117 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

Here, Dr. King opined, among other relevant opinions, that plaintiff, when triggered, which would occur in any work situation, would "have experiences of not understanding what she was supposed to do or not be able to effectively follow through on even the simplest tasks or chores." AR 1297. Clearly fully crediting this opinion could lead to a finding of disability; therefore, the ALJ's error in failing to provide substantial evidence for rejecting it is not harmless error. This matter must be reversed. *See Molina*, *supra*, 674 F.3d at 1117 (quoting *Carmickle*, *supra*, 533 F.3d at 1162).

**III. Whether the ALJ erred by providing a residual functional capacity ("RFC") to perform light work limited to simple routine tasks but no social limitations and erred by concluding that plaintiff was capable of a RFC that included an ability to be less than 10% off task in a workday.**

The Court already has concluded that this matter must be reversed and remanded for further consideration of the medical evidence, *see supra*, Sections I and II. Therefore, the RFC must be determined anew following remand of this matter.

**IV. Whether this Court should reverse with a direction to award benefits or for further administrative proceedings**

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595

1  (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for

2  determining when [improperly rejected] evidence should be credited and an immediate award of

3  benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v.*

4  *Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). After concluding at step one that an ALJ has erred,

5  (not harmless error), the Court next should "turn to the question whether further administrative

6  proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103

7  (9th Cir. 2014) (citations omitted). When looking at this issue, the Court should consider if the

8  record is free from relevant conflicts. *See id*.

9  Based on a review of the record, the Court concludes that the record is not free from

10 important and relevant conflicts, such as conflicts in the medical evidence. Therefore, this matter

11 should be reversed for further administrative proceedings, including a *de novo* hearing, not with

12 a direction to award benefits. *See id.*

13                                                 CONCLUSION

14 Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

15 plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is reversed and this

16 matter is remanded for further administrative proceedings in accordance with the findings

17 contained herein.

18

19 Dated this 6th day of August, 2021.

20

21                                                          _____
                                                            David W. Christel
22                                                          United States Magistrate Judge

23

24